KENT J. SCHMIDT (SBN 195969)
schmidt.kent@dorsey.com
JILL A. GUTIERREZ (SBN 258138)
gutierrez.jill@dorsey.com
DORSEY & WHITNEY LLP
600 Anton Boulevard, Suite 2000
Costa Mesa, CA 92626-7655
Telephone:  (714) 800-1400
Facsimile:  (714) 800-1499

Attorneys for Defendant
SMARTSWEETS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRICIA HUFFMAN, individually and on behalf of all similarly situated persons,<br><br>                          Plaintiff,<br><br>     v.<br><br>SMARTSWEETS, INC.<br>                          Defendant. | CASE NO:<br><br>[Los Angeles County Superior Court Case No. 26STCV05079]<br><br>**APPENDIX OF STATE COURT PLEADINGS IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL OF CLASS ACTION TO THE UNITED STATES DISTRICT COURT**<br><br>[Filed Concurrently with Notice of Removal; Declarations of Kent J. Schmidt and Matthew Tyson Jobke; Civil Cover Sheet; and Certificate of Interested Parties/Corporate Disclosure Statement]<br><br>Action Filed:      February 18, 2026<br>Action Removed:  April 7, 2026<br>Trial Date:        None Set |

APPENDIX OF STATE COURT PLEADINGS

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

Attached hereto is the appendix of state court pleadings filed concurrently with Defendant SmartSweets Inc.'s, Notice of Removal of Action to the United States District Court for the Central District of California pursuant to 28 U.S.C. sections 1332, 1441, and 1446.

| EXHIBIT NO. | DOCUMENT DESCRIPTION |
|---|---|
| 1 | Summons on Complaint (2/18/26) |
| 2 | Notice of Case Assignment – Unlimited Civil Case (2/18/26) |
| 3 | Complaint (2/18/26) |
| 4 | Civil Case Cover Sheet (2/18/26) |
| 5 | CLRA Venue Declaration (2/18/26) |
| 6 | Alternative Dispute Resolution Packet (2/18/26) |
| 7 | Minute Order (Court Order Scheduling Initial Status Conference (3/6/26) |
| 8 | Initial Status Conference Order (3/6/26) |
| 9 | Clerk's Certificate of Service (3/6/26) |
| 10 | State Court Action Register of Actions |

DATED:  April 7, 2026                    DORSEY & WHITNEY LLP


By: */s/ Kent J. Schmidt*
    Kent J. Schmidt
    Jill A. Gutierrez
    Attorneys for Defendant
    SmartSweets, Inc.

# EXHIBIT 1

**EXHIBIT 1, PAGE 2**

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
SMARTSWEETS, INC.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
TRICIA HUFFMAN, individually and on behalf of all similarly situated persons

**Electronically FILED by**
**Superior Court of California,**
**County of Los Angeles**
**2/18/2026 1:05 PM**
**David W. Slayton,**
**Executive Officer/Clerk of Court,**
**By S. Cwikla, Deputy Clerk**

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Los Angeles Superior Court of CA

Stanley Mosk Courthouse, 111 N. Hill Street, Los Angeles, CA 90012

CASE NUMBER:
*(Número del Caso):*

**26STCV05079**

David W. Slayton, Executive Officer/Clerk of Court

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Alexander E. Wolf, Milberg, PLLC 280 S. Beverly Drive, Penthouse, Beverly Hills, CA 90212, 872-365-7060

DATE: 02/18/2026
*(Fecha)*

Clerk, by S. Cwikla , Deputy
*(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

**EXHIBIT 1, PAGE 3**

# EXHIBIT 2

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

Spring Street Courthouse

312 North Spring Street, Los Angeles, CA 90012

## NOTICE OF CASE ASSIGNMENT

## UNLIMITED CIVIL CASE

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Los Angeles
**02/18/2026**
David W. Slayton, Executive Officer / Clerk of Court
By: _____ S. Cwikla _____ Deputy

**Your case is assigned for all purposes to the judicial officer indicated below.**

CASE NUMBER: 26STCV05079

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|
| ✔ | Theresa M. Traber | 1 | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record    David W. Slayton, Executive Officer / Clerk of Court

on 02/19/2026 _____
(Date)

By S. Cwikla _____, Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

**EXHIBIT 2, PAGE 5**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

**EXHIBIT 2, PAGE 6**

# EXHIBIT 3

Alexander E. Wolf (SBN 299775)
awolf@milberg.com
**MILBERG, PLLC**
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212
Tel: 872-365-7060

Trenton R. Kashima (SBN 291405)
tkashima@brysonpllc.com
**BRYSON HARRIS SUCIU
& DEMAY PLLC**
19800 MacArthur Blvd., Suite 270
Irvine, CA 92612
Tel: 212-946-9389

Attorneys for Plaintiff

Electronically FILED by
Superior Court of California,
County of Los Angeles
2/18/2026 1:05 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By S. Cwikla, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| TRICIA HUFFMAN, individually and on behalf of all similarly situated persons,<br><br>               Plaintiff,<br><br>   v.<br><br>SMARTSWEETS, INC.<br><br>               Defendant. | Case No.  26STCV05079<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

CLASS ACTION COMPLAINT

**EXHIBIT 3, PAGE 8**

Plaintiff Tricia Huffman ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action complaint against Defendant SmartSweets, Inc. ("Defendant" or "SmartSweets"). The allegations asserted herein are based on Plaintiff's personal knowledge of facts pertaining to herself and upon information and belief, including further investigation conducted by Plaintiff's counsel, as to the remainder.

## I.   NATURE OF THE ACTION.

1. Plaintiff respectfully commences this class action to remedy and stop Defendant's deceptive business practice of marketing and selling certain of its low-sugar candy products which contain or risk containing significant levels of heavy metals like arsenic, despite mispresenting otherwise. The products at issue are Smart Sweets-brand Sweet Fish and Caramels (the "Products").

2. Defendant is a manufacturer and seller of supposedly healthy alternatives to traditional candy. Plaintiff is one of many consumers who purchased the Products for regular and ordinary use.

3. Prior to placing the Products into the stream of commerce for consumption by adults and children, Defendant knew the Products contained or risked containing significant levels of arsenic. Yet Defendant omitted this information on packaging and failed to warn about the significant presence or risk of presence of arsenic, a heavy metal, despite advertising the Products to the contrary.

4. Plaintiff and Class Members reasonably relied on Defendant's representations and partial omissions which led them to believe the Products were without detectable levels of heavy metals, let alone significant or unsafe levels.

5. Plaintiff and Class Members purchased and/or used the Products and were therefore exposed to, or risked being exposed to, arsenic linked to adverse health conditions.

6. The heavy metals are avoidable constituents in the Products and Defendant's manufacturing process.

7. Defendant is therefore liable to Plaintiff and Class Members for selling, advertising, manufacturing, and distributing the Products with affirmative misrepresentations and without conspicuously disclosing that the Products contain or risk containing detectible, significant, or unsafe levels of heavy metals.

CLASS ACTION COMPLAINT                    **EXHIBIT 3, PAGE 9**

## II.    PARTIES.

8.    Plaintiff Tricia Huffman is, and at all times relevant to this action was, a resident of Los Angeles County, California. Plaintiff therefore is a citizen/domiciliary of California.

9.    Defendant SmartSweets Inc. is, and at all times relevant to this action was, a corporation organized under the laws of British Columbia (Canada). On information and belief, its principal place of business is in British Columbia at #200 - 75 West Broadway, Vancouver, BC, V5Y 1P1, Canada.

## III.    JURISDICTION AND VENUE.

10.    This is a class action lawsuit brought pursuant to Code of Civil Procedure § 382, and this Court has jurisdiction over Plaintiff's claims because the amount in controversy exceeds this Court's jurisdictional minimum.

11.    Venue is proper because Defendant does business in California, sells and/or distributes products to consumers in California, and a substantial part of Defendant's conduct giving rise to the claims occurred in California. On information and belief, Defendant knowingly sells the Products to customers in this county through websites, stores, and third-party retailers and distributors. Venue is thus proper pursuant to California Code of Civil Procedure §§ 395 and 395.5, California Business and Professions Code §§ 17203, 17204, and 17535, and California Civil Code § 1780(d) because Defendant does business in this county and one of Plaintiff's transactions with Defendant took place in this county.

12.    Further, as set forth herein, Defendant has contacts in this forum sufficient to subject it to personal jurisdiction. Defendant continuously and systematically places goods into the stream of commerce for distribution in California, offers to ship products to California, markets the Products to persons in California, and manufactures and supplies the Products to third-party sellers to sell to consumers in California. Exercising jurisdiction over Defendant is fair, just, and reasonable considering the quality and nature of Defendant's acts that occur in California, and which affect interests located in California. Defendant has purposefully availed itself of the privilege of conducting activities in California, and should reasonably anticipate being haled into court in California

## IV.    FACTUAL ALLEGATIONS.

**A.    Defendant is a Prominent, Knowledgeable, and Experienced Manufacturer and Seller of Low-Sugar Candy.**

3

CLASS ACTION COMPLAINT                                    **EXHIBIT 3, PAGE 10**

13.     Ordinary candy is a higher sugar product with little to no health benefits. Capitalizing on the public's desire for healthy alternatives to high-sugar candy, Defendant developed SmartSweets.

14.     According to Defendant's "About Us" page, its founder states: "I've always had a love affair with candy. I started SmartSweets when I recognized I wanted to change my relationship with candy after experiencing the negative effects excess sugar has on our health. I tried to eat less sugar, but that only led me to crave candy even more, sparking my quest to Kick Sugar, Keep Candy! After spending months recipe testing in my kitchen with a gummy bear mould from Amazon, I innovated the first delicious candy - without all the sugar."[1]

15.     That webpage goes on to state:[2]

## Our Mission

**KICK SUGAR KEEP CANDY**™

**Have you ever noticed the first and primary ingredient in most traditional candy is sugar? We are committed to innovating the delicious candy you know and love with less sugar! SmartSweets candy has up to 92% less sugar per 50g serving versus the leading traditional candy equivalents – creating a world filled with sweeter choices. Feel good about candy!**

---

[1] https://smartsweets.com/pages/our-story (last accessed February 13, 2026).
[2] *Id.*

4
CLASS ACTION COMPLAINT

**EXHIBIT 3, PAGE 11**

16.     Defendant differentiates itself in the marketplace by advertising low-sugar and relatively high-fiber candy alternatives, manufactured using purportedly high quality ingredients. To that end, its website states: "Our Philosophy [¶] Innovative Ingredients [¶] We are committed to relentlessly researching, testing, and choosing the most advanced, innovative ingredients to create the delicious candy you know and love while kicking as many grams of sugar per bag as possible."[3]

17.     The "Our Ingredients" page of Defendant's website further touts the brand's (and the Products') premium ingredients, health-conscious positioning, and carefully selected and tested composition.[4]

## Our Ingredients Philosophy

# KICK SUGAR
# KEEP CANDY™

## We are committed to relentlessly researching, testing, and choosing the most advanced, innovative ingredients to create the delicious candy you know and love while kicking as many grams of sugar per bag as possible.

---

[3] *Id.*

[4] https://smartsweets.com/pages/our-ingredients (last accessed February 13, 2026).

CLASS ACTION COMPLAINT                                    **EXHIBIT 3, PAGE 12**

# Feel Good About Candy

**We love candy too! But we don't love all the excessive sugar or artificial sweeteners in other sweets. Our pinky promise to you is delicious candy with:**

**92%** — **Up to 92% less sugar per 50g verses the leading traditional candy equivalents**

**No artificial sweeteners**

**1-4g** — **Only 1-4 grams of sugar per serving**

**No added sugar**

**No sugar alcohols (erythritol, maltitol, sorbitol and xylitol)**

**Smartly sweetened with high-quality stevia**

6

CLASS ACTION COMPLAINT

**EXHIBIT 3, PAGE 13**

**B.      Independent Government Study Recently Uncovers Significant Levels of Arsenic in the Products.**

18.      The State of Florida's "Health Florida First" initiative recently tested various candy products readily available in the marketplace.[5] The results of that testing was published in January 2026.[6]

19.      The results showed (1) Smart Sweets Caramel contained 240 parts per billion (pbb) of arsenic, such that the **annual safe consumption** limit is only **1 bag** for children and 2.4 bags for adults; and (2) Smart Sweets Sweet Fish contained 180 ppb of arsenic, such that the annual safe consumption limit is only 1 bag for children and 2.4 bags for adults.

## HEALTHY FLORIDA FIRST — EXPOSING FOOD TOXINS — Candy

The following shows approximate "safe" consumption amounts per year, based on developmental age, where arsenic was detected. Arsenic exposure beyond limits that are considered safe, can increase the risk of cancers, including lung, skin, kidney, and bladder.

\* Indicated candy marketed as a healthier option.

| Candy | Company | Brand | Arsenic Parts per Billion (PPB) | Safe Consumption Limit, Per Year (approximate) Child | Safe Consumption Limit, Per Year (approximate) Adult |
|---|---|---|---|---|---|
| | Smart Sweets | Smart Sweets Caramel \* | 240 | 1 bag (if 1 bag is 45 grams) | 2 ⅖ bags (if 1 bag is 45 grams) |
| | | Smart Sweets Red Twists \* | - | risk not identified | risk not identified |
| | | Smart Sweets Sweet Fish \* | 180 | 1 bag (if 1 bag is 50 grams) | 2 ⅖ bags (if 1 bag is 50 grams) |

20.      According to the State of Florida, the above chart "shows approximate 'safe' consumption amounts per year, based on developmental age, where arsenic was detected." [7] "Arsenic exposure beyond limits that are considered safe, can increase the risk of cancers, including lung, skin, kidney, and bladder."[8]

21.      This testing was performed using the EPA Method 6010D, which detects total arsenic.[9]

---

[5] https://exposingfoodtoxins.com/candy/ (last accessed February 13, 2026).

[6] https://exposingfoodtoxins.com/wp-content/uploads/2026/01/Candy-Arsenic.v5.pdf (last accessed February 13, 2026).

[7] https://exposingfoodtoxins.com/candy/

[8] Id.

[9] https://www.goodhousekeeping.com/food-products/a70247585/arsenic-in-candy-florida/ (last accessed February 13, 2026).

7

22.    Specifically, "Samples were obtained from commonly used retail outlets, including both brick-and-mortar stores and online retailers, to reflect real-world consumer purchasing patterns."[10] "Samples were analyzed using EPA Method 6010D for the multi-elemental determination of metals in solid and liquid samples. The laboratory followed its established quality assurance plan to validate and verify all results."[11]

**C.    Exposure to Arsenic from the Products is Significant and Hazardous.**

23.    Heavy metals bioaccumulate in the body. This means the body cannot excrete and expel toxins as quickly as they are absorbed, so the amount present in the body—along with the associated negative health risks—grows over time.[12]

24.    The U.S. Food and Drug Administration ("FDA") and World Health Organization ("WHO") have declared heavy metals "dangerous to human health."[13]

25.    For example, exposure to heavy metals puts children at risk for diminished mental capacity, behavioral problems (like attention deficit hyperactivity disorder), type 2 diabetes, and cancer, among other health issues.

26.    Heavy metals also pose health risks to adults.  Even modest amounts of ingested heavy metals can increase the risk of cancer, cognitive and reproductive problems, and other adverse conditions. These facts underscore the importance of limiting heavy metal exposure and consumption.

27.    It is particularly important to limit or eliminate heavy metals from food products that are consumed frequency, like candies and snack foods.

---

[10] https://markbishofsky.substack.com/p/news-sprint-february-1st-2026

[11] *Id.*

[12] Jesse Hirsch, *Heavy Metals in Baby Food: What You Need to Know*, Consumer Reports (June 27, 2023), available at https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/.

[13] *Staff Report: Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, U.S. House of Representatives Committee on Oversight and Reform, Subcommittee on Economic and Consumer Policy, Feb. 4, 2021 ("House Report") at 2, available at https://oversightdemocrats.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.

CLASS ACTION COMPLAINT

**EXHIBIT 3, PAGE 15**

### 1.    Arsenic.

28.    "Arsenic is a naturally occurring element widely distributed in the earth's crust"[14] and is "widely distributed throughout the environment in the air, water and land."[15] "It is highly toxic in its inorganic form."[16] The World Health Organization[17] and the U.S. Environmental Protection Agency ("EPA")[18] classify inorganic arsenic as a "confirmed carcinogen."

29.    Long-term exposure to inorganic arsenic, mainly through ingestion or oral exposure, can lead to chronic arsenic poisoning and even death.[19] Namely, such chronic arsenic poisoning "has resulted in gastrointestinal effects, anemia, peripheral neuropathy, skin lesions, hyperpigmentation, [] liver or kidney damage in humans" and has also been "linked to a form of skin cancer and also to bladder, liver, and lung cancer."[20] "Inorganic arsenic exposure of humans, by the inhalation route, has been shown to be strongly associated with lung cancer" and "with irritation of the skin and mucous membranes and effects in the brain and nervous system."[21]

30.    Even at lower levels, acute arsenic exposure "can cause nausea and vomiting, decreased production of red and white blood cells, abnormal heart rhythm, damage to blood vessels, and a sensation of 'pins and needles' in hands and feet."[22] "Ingesting or breathing low levels of inorganic arsenic for a long time" can also "cause a darkening of the skin and the appearance of small 'corns' or 'warts' on the palms, soles, and torso."[23]

---

[14] https://www.epa.gov/sites/default/files/2014-03/documents/arsenic_toxfaqs_3v.pdf.
[15] https://www.who.int/news-room/fact-sheets/detail/arsenic.
[16] Id.
[17] Id.
[18] https://www.epa.gov/sitcs/default/files/2016-09/documents/arsenic-compounds.pdf.
[19]    See    https://www.who.int/news-room/fact-sheets/detail/arsenic; https://www.epa.gov/sites/default/files/2014-03/documents/arsenic_toxfaqs_3v.pdf.
[20] https://www.epa.gov/sites/default/files/2016-09/documents/arsenic-compounds.pdf.
[21] Id.
[22] https://www.epa.gov/sites/default/files/2014-03/documents/arsenic_toxfaqs_3v.pdf.
[23] Id.

9

31.     "Arsenic is also associated with adverse pregnancy outcomes and infant mortality, with impacts on child health [], and exposure in utero and in early childhood has been linked to increases in mortality in young adults due to multiple cancers, lung disease, heart attacks and kidney failure []. Numerous studies have demonstrated negative impacts of arsenic exposure on cognitive development, intelligence and memory [].[24]

**2.      The Levels of Arsenic in the Products are Material and Significant.**

32.     While the State of Florida's testing did not separately test for inorganic arsenic, it did test for total arsenic (i.e., organic arsenic and inorganic arsenic). And even though organic arsenic is less harmful than inorganic arsenic, both forms are harmful and should be avoided.[25]

33.     As one article explains "the numbers found by Florida's health department do raise an eyebrow, especially in context to the FDA's set limits on arsenic in certain foods, including bottled water and apple juice at 10 parts per billion, and infant rice cereal at 100 parts per billion—limits that are far below the levels detected in some of the candies tested."[26]

34.     "The discovery of high levels of arsenic in any food, including candy, is a serious public health concern, especially because—in this case—children are often the primary consumers," according to Dr. Darin Detwiler, a food safety expert and associate professor at Northeastern University's College of Professional Studies.[27]

35.     "While occasional exposure to small amounts of arsenic may not cause immediate harm, *chronic exposure* (even at *low levels*) can increase the risk of cancer, cardiovascular disease, and developmental issues in children. Consumers should pay attention to recalls and advisories from health authorities and avoid any specific brands or products identified as contaminated."[28]

---

[24] https://www.who.int/news-room/fact-sheets/detail/arsenic.

[25] https://www.goodhousekeeping.com/food-products/a70247585/arsenic-in-candy-florida/ (last accessed February 13, 2026).

[26] *Id.*

[27] *Id.*

[28] *Id.*

CLASS ACTION COMPLAINT                    **EXHIBIT 3, PAGE 17**

36.     Of note, the Products are advertised as premium, low-sugar healthier alternatives to traditional high-sugar candy. So, a healthy product composition and premium ingredients—including the absence of toxins like arsenic—is important to buyers of the Products.

37.     When faced with two options in a store—one which does not contain or risk containing detectable and significant levels of heavy metals, and another which contains or risks containing significant levels of heavy metals—reasonable consumers would avoid the latter. This is because consumers value high quality products that do not contain or risk containing detectable and significant levels of toxins.

38.     Additionally, the presence of arsenic in significant amounts brings into question the Products' supposed competitive advantage—premium candy alternatives without undesirable qualities, which consumers can use to maintain health. Because the Products are deceptively advertised, reasonable consumers are deprived of making an informed choice.

**D.     Candy Can Be Manufactured Without Detectable Arsenic.**

39.     Based on present day manufacturing capabilities, candy can be (and routinely is) manufactured without detectable levels of arsenic.

40.     According to the State of Florida's testing, several candies showed no detectable levels of arsenic at all. That list includes the Laffy Taffy's cherry flavor, Reese's Peanut Butter Cups, Whoppers, M&M's, Twix, Milky Way, Annie's Organic Bunny Fruit Flavored Snacks in the Berry Patch flavor, and all Unreal and Yum Earth candies tested. It also includes the Smart Sweets Red Twists flavor.

41.     Accordingly, the reasonable consumer's expectations described herein are in fact reasonable and do not set an impossible standard.

**E.     Defendant Failed to Comply with Current Good Manufacturing Practices, Resulting in Adulterated Candy Products**

42.     Under the FDCA, "[a] food is adulterated if it contains a poisonous or deleterious substance that may render it injurious to health." 21 U.S.C. § 342(a).

43.     The elevated arsenic levels found in the Products renders them "deleterious substance[s] that may render [them] injurious to health."

11

CLASS ACTION COMPLAINT          **EXHIBIT 3, PAGE 18**

44.     As a manufacturer of food goods, Defendant had an obligation to adhere to industry Current Good Manufacturing Practices ("cGMPs").   These practices include preventing chemical contamination, monitoring hazards, and testing when appropriate.

45.     Defendant chose to use certain plant-derived ingredients, including chicory root fiber, isomalto-oligosaccharides, and potato starch, which are known to experienced manufacturers as vectors for arsenic contamination.  Thus, it was incumbent on Defendant to test for arsenic levels.

46.     As discussed above, as a result of cGMPs in the industry, most manufacturers of candy products do not bring candy products to market that contain elevated levels of arsenic.

47.     Defendant's violations of these federal laws also constitute violations of California state law, which explicitly incorporates the FDCA standards.  *See* Cal. Health & Safety Code § 110100(a); Cal. Health & Safety Code § 110105.

**F.      Reasonable Consumers are Deceived by Defendant's Misrepresentations and Believed the Products Did Not Contain or Risk Containing Detectable, Significant, and Unsafe Levels of Heavy Metals.**

48.     Defendant's Products should not have contained (or risk containing) detectable levels of heavy metals, let alone significant levels or unsafe levels, based on the Products' labeling and advertising.

49.     As explained above, Defendant positions itself and its brand as healthy, trustworthy, safe, and responsible to consumers. Defendant's advertising and labeling is designed to reinforce this message. To that end, exemplars of the Products' packaging and advertising (collected from publicly available sources) are shown below.

12
CLASS ACTION COMPLAINT

**Sweet Fish**



Front Label

CLASS ACTION COMPLAINT

**EXHIBIT 3, PAGE 20**



Rear Label

*Images dated February 13, 2026 (Amazon.com)*

CLASS ACTION COMPLAINT

**EXHIBIT 3, PAGE 21**

**Caramels**



Front Label

CLASS ACTION COMPLAINT                    **EXHIBIT 3, PAGE 22**



Rear Label

*Images dated February 13, 2026 (Amazon.com)*

CLASS ACTION COMPLAINT

**EXHIBIT 3, PAGE 23**

50. The above representations appear on packaging and at the point-of-sale online.

51. The above representations omit any mention of the fact that the Products contain dangerous levels of toxic heavy metals.

52. Additionally, the above representations, taken individually and/or collectively, affirmatively lead reasonable consumers to believe that the Products (1) did not contain or risk containing toxins like heavy metals in any amount, (2) did not contain or risk containing toxins like heavy metals in significant or potentially dangerous amounts, and (3) could not increase the negative health risks associated with heavy metals consumption if consumed regularly.

53. Thus, the challenged statements, taken individually and collectively, are deceptive. Namely:

    a. "Feel Good About Candy"

    b. "No Artificial Sweeteners"

    c. "No Added Sugar"

    d. "Good Source of Fiber"

    e. "Plant-Based"

    f. "No Sugar Alcohols"

    g. "Colored With Fruit & Vegetable Juices"

    h. "Gluten Free"

    i. "92% less sugar than traditional gummy fish"

    j. "Based on a 50g serving size, our sweet fish contain 3g of sugar and traditional gummy fish candy contains 38g of sugar"

    k. "95% less sugar than traditional caramels"

    l. "Based on a 45g serving size: Our caramels contain 1g of sugar and traditional caramels contain 19g of sugar"

54. Moreover, the list of undesired attributes that the Products boastfully do not contain are misleading because the Products contain or risk containing detectable and significant levels of heavy metals. The overall impression is that the Products do not contain or risk containing any levels of toxins like heavy meals, let alone significant or unsafe levels when consumed regularly.

CLASS ACTION COMPLAINT

**EXHIBIT 3, PAGE 24**

55.     Any reasonable consumer would consider the presence or potential presence of dangerous substances like heavy metals important information and contrary to the Products' advertising. Indeed, had the mere presence or potential presence of heavy metals been disclosed by Defendant, reasonable consumers would not purchase the Products (or would have paid much less for the Products).

56.     The above deception is particularly material in the context of food products advertised as healthier and superior alternatives to traditional high-sugar candy. Given the absence of high sugar levels, consumers feel comfortable consuming the Products frequently without negative health consequences.

57.     Exposure to heavy metals should be avoided and minimized. So, the presence of heavy metals at detectable and significant levels in the Products is important to consumers. And based on the Products' packaging and advertising, reasonable consumers did not expect that the Products contained or risk containing detectable and significant levels of heavy metals.

58.     Likewise, the fact that the Products were adulterated, violated cGMPs, and were illegal to sell is important to consumers.  Plaintiff and other consumers would never have purchased the Products, or would have paid substantially less, if they had known they were illegal to sell.

**G.     Defendant's Duty to Disclose.**

59.     Defendant was obligated to disclose that the Products contained or risk containing detectable and significant levels of heavy metals because that information is contrary to the Product's advertising.

60.     Defendant could have and should have prominently disclosed the limitations and omitted facts on packaging or at the point of sale—all prior to purchase. Had Defendant disclosed that the Products contain or risk containing detectable or significant levels of heavy metals, consumers would have been aware of it.

61.     Superior Knowledge: Defendant is experienced in the design and manufacture of food products like the Products at issue. On information and belief, as a manufacturer and company whose goal is to improve health and decrease high-sugar candy consumption, Defendant was aware of the raw inputs used to manufacture the Products and, thus, was aware that the Products were manufactured with significant levels of heavy metals present in the finished Products. Further, on information and belief, Defendant conducts tests, including pre-sale testing, to verify the contents and specifications of the

18
CLASS ACTION COMPLAINT

**EXHIBIT 3, PAGE 25**

Products sold. Indeed, Defendant repeatedly touts that its products are free of harmful ingredients and attributes to differentiate itself in the marketplace.

62.     Defendant had additional reason to test for arsenic specifically, as arsenic contamination is known to manufacturers as a risk with certain plant-derived ingredients, including chicory root fiber, isomalto-oligosaccharides, and potato starch.

63.     Before purchasing the Products, consumers had no reasonable way to know the Products contained detectable heavy metals or significant levels of heavy metals.

64.     Contrary/Partial Representations: As explained above, by aggressively promoting the Products' beneficial attributes and composition, and by describing the absence of negative and undesirable attributes, Defendant is obligated to disclose material limitations that negatively affect the use of the Products. As explained above, based on the partial representations, consumers believe the Products do not contain detectable, significant, or unsafe levels of toxins like heavy metals.

65.     Defendant knows that reasonable consumers would find the presence or material risk of heavy metals and other toxins material.

66.     Defendant knows that reasonable consumers would not knowingly consume or have their children consume products that contained significant levels of heavy metals.

67.     Defendant knows that reasonable consumers would not knowingly consume or have their children consume products that were adulterated, violated cGMPs, and were illegal to sell.

**H.     Plaintiff Tricia Huffman's Experience.**

68.     Plaintiff Huffman repeatedly purchased the Products, including at least six times per year for the past three years. To her recollection, she purchased the Sweet Fish and Caramels from ThriveMarket.com, Whole Foods stores, Target stores, and/or Sprouts stores. Because these are ordinary consumer goods, she does not have receipts documenting every purchase. But she did purchase at least one of the Products on the following dates, among many others: 12/20/2024 (Target Store in Mira Loma, CA); 11/25/2022 (2x Sweet Fish 1.8 oz pouches and 2x Caramels 1.6 oz bags from ThriveMarket.com);

CLASS ACTION COMPLAINT                                    **EXHIBIT 3, PAGE 26**

9/22/2025 (Mini Sweet Fish Multipack 6.24 oz from Whole Foods in CA); 7/9/2021 (Sweet Fish 5.3 oz from Whole Foods in CA); and 12/13/2024 (Caramels 1.6 oz from Whole Foods in CA).[29]

69. Representative examples of the Products' packaging are shown in paragraphs 49, above.

70. Before purchasing and repurchasing the Products, Plaintiff viewed the Products' exterior label and the ThriveMarket.com listing page for the Products (which included images of the labels).

71. Accordingly, as shown above, she saw that the Products were generally described as: "Feel Good About Candy"; "No Artificial Sweeteners"; "No Added Sugar"; "Good Source of Fiber"; "Plant-Based"; "No Sugar Alcohols"; "Colored With Fruit & Vegetable Juices"; "Gluten Free"; "92% less sugar than traditional gummy fish"; "Based on a 50g serving size, our sweet fish contain 3g of sugar and traditional gummy fish candy contains 38g of sugar"; "95% less sugar than traditional caramels"; and "Based on a 45g serving size: Our caramels contain 1g of sugar and traditional caramels contain 19g of sugar."

72. Plaintiff understood these statements by Defendant as representing that the Products (1) did not contain or risk containing toxins like heavy metals in any amount, (2) did not contain or risk containing toxins like heavy metals in significant or potentially dangerous amounts, and (3) could not increase the negative health risks associated with heavy metals consumption if consumed regularly.

73. Plaintiff relied on these representations in deciding to purchase the Products.

74. Plaintiff would not have purchased the Products, or at minimum would have paid less for them, had she known that the Products contained (or risked containing) any amount of heavy metals like arsenic, much less the alarmingly high levels found in the Products.

75. Plaintiff would not have purchased the Products had she known that the Products contained (or risked containing) significant levels of heavy metals like arsenic.

76. Plaintiff would not have purchased the Products, or at minimum would have paid less for them, had she known that the Products could increase the negative health risks associated with heavy metals consumption if consumed regularly.

---

[29] Other Smart Sweet flavor varieties purchased by Plaintiff Huffman include Sweet Chews, Sourmelon Bites, Sour Blast Buddies Pink Lemonade, Sour Blast Buddies, and Peach Rings.

20

CLASS ACTION COMPLAINT                    **EXHIBIT 3, PAGE 27**

77.     The Products were not, in fact, truthfully advertised. Each Product Plaintiff purchased was worth less than the purchase price because it either contained or risked containing detectable, significant, and/or dangerous levels of heavy metals.

78.     Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's deceptive and unfair conduct.

79.     Plaintiff continues to be interested in purchasing healthier alternatives to high sugar candy, but will be unable to trust and rely on Defendant's packaging, and so will not purchase Defendant's Products. Plaintiff would be willing to purchase the Products again with the assurance that Defendant does not omit the presence of heavy metals on labeling, and that the Products do not contain or risk containing detectible or significant levels of heavy metals.

## V.     CLASS ACTION ALLEGATIONS

80.     Plaintiff brings this action on behalf of herself and all persons similarly situated pursuant to California Civil Procedure Code section 382, and seeks certification of the following class and subclasses:

**Nationwide Class:**
All persons in the United States who purchased one or more Products during the Class Period.

**California Class:**
All persons in California who purchased one or more Products during the Class Period.

**Multi-State Consumer Protection Class:**
All persons in any state with consumer fraud laws similar to California[30] who purchased one or more Products during the Class Period.

---

[30] While discovery may alter the following, Plaintiffs assert that states with similar consumer fraud laws under the facts of this case include: Alaska (AS §§ 45.50.471, *et seq.*), Arkansas (Ark. Code §§ 4-88-101, *et seq.*), California (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), Connecticut (Conn. Gen. Stat. §§ 42-110, *et seq*), Delaware (Del. Code tit. 6, §§ 2511, *et seq.*), District of Columbia (D.C. Code §§ 28-3901, *et seq.*), Florida (Fla. Stat. §§ 501.201, *et seq.*), Hawaii (Haw. Rev. Stat. §§ 480-1, *et seq.*), Illinois (815 ICLS §§ 501/1, *et seq.*), Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*), Michigan (Mich. Comp. Law §§ 445.901, *et seq.*), Minnesota (Minn. Stat. §§ 325F.67, *et seq.*), Missouri (Mo. Rev. Stat. §§ 407.010, *et seq.*), New Jersey (N.J. Stat. §§ 56:8-1, *et seq.*), New York (N.Y. Gen. Bus. Law. §§ 349, *et seq.* and §§ 350, *et seq.*), Rhode Island (R.I. Gen. Laws §§ 6-13.1-1, *et seq.*), Vermont (Vt. Stat. tit. 9, §§ 2451, *et seq.*), Washington (Wash. Rev. Code §§ 19.86.010, *et seq.*), and Wisconsin (Wis. Stat. §§ 100.18, *et seq.*). *See Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 96 (2d Cir. 2018);

CLASS ACTION COMPLAINT                **EXHIBIT 3, PAGE 28**

81.    The Nationwide Class and subclasses are referred to as the "Class." Excluded from the Class are the Defendant, the officers and directors of the Defendant, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which either Defendant has or had a controlling interest, and the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.  Also excluded from the Class are persons who purchased the Products for purposes of resale.

82.    The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, discovery, concealment, and accrual issues, and ending on the date the class is certified.[31]

83.    Plaintiff reserves the right to expand, limit, modify, or amend the class definition stated above, including the addition of one or more subclasses, in connection with a motion for class certification, or at any other time, based upon, among other things, changing circumstances, or new facts obtained during discovery. This includes subclasses based on individual products and sales channels.

84.    **Numerosity.** The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, but on information and belief, Plaintiff alleges there are in excess of 5,000 members of the Class.

85.    **Typicality.** Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendant's course of conduct as described herein.

86.    **Adequacy of Representation.** Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced

---

*Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 201, 204 (W.D.N.Y. 2020); *see also Benson v. Newell Brands, Inc.*, No. 19 C 6836, 2021 WL 5321510, *9-10 (N.D. Ill. Nov. 16, 2021) (certifying a similar multi-state consumer protection class).

[31] The Class Period begins at minimum 4 years from the date of filing of this action, but based on tolling, may extend beyond that date.

CLASS ACTION COMPLAINT                                    **EXHIBIT 3, PAGE 29**

in the handling of complex litigation and class actions, and Plaintiff and counsel intend to diligently prosecute this action.

87. **Existence and Predominance of Common Questions of Law or Fact.** Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

a. Whether the Defendant manufactured, distributed, advertised, marketed, and/or sold the Products.

b. Whether the Products contain or risk containing detectable and significant levels of heavy metals like arsenic.

c. Whether the Products contain or risk containing unsafe levels of heavy metals like arsenic.

d. Whether Defendant knew or should have known the Products contained or risked containing significant or unsafe levels of heavy metals like arsenic.

e. Whether a reasonable consumer would consider the presence of the heavy metals described herein to be material.

f. Whether Defendant misrepresented the Products to be of a particular standard or quality.

g. Whether Defendant intended not to sell, manufacture, or distribute the Products as advertised and labeled.

h. Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive.

i. Whether Defendant breached implied warranties under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790, et seq. ("Song-Beverly Act").

j. Whether Defendant engaged in "unlawful," "unfair," or "fraudulent" business acts or practices in violation of the California Unfair Competition Law under Business & Professions Code § 17200, et seq.

CLASS ACTION COMPLAINT                    **EXHIBIT 3, PAGE 30**

k.  Whether Defendant engaged in unfair or deceptive business practices in violation of the California Consumers Legal Remedies Act, Business & Professions Code § 1750, et seq.

l.  Whether Defendant was unjustly enriched as a result of the unlawful conduct alleged herein such that it would be inequitable for Defendant to retain the benefits conferred upon it by Plaintiff and the Class.

m.  Whether Defendant intentionally or recklessly omitted and/or failed to disclose that the Products contain or risk containing the significant and unsafe heavy metals described herein.

n.  Whether Defendant concealed that Products contain or risk containing the significant and unsafe levels of heavy metals described herein.

o.  Whether Plaintiff and the Class are entitled to damages, restitution, and disgorgement from Defendant.

p.  Whether injunctive relief is appropriate and necessary to enjoin Defendant from continuing to supply the Products as manufactured and advertised.

88.  **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Requiring each individual class member to file an individual lawsuit would unreasonably consume the amounts that may be recovered. Even if every member of the Class could afford individual litigation, the adjudication of at least tens of thousands of identical claims would be unduly burdensome to the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the members of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. The prosecution of separate actions by individual members of the Class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members

CLASS ACTION COMPLAINT               **EXHIBIT 3, PAGE 31**

of the Class who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

89. **Substantial Similarity**. On information and belief, the Products at issue in the action are substantially similar in all material respects. Namely, the Products consist of the same or similar ingredients and source materials, contain or risk containing the same or similar levels of heavy metals, are manufactured using the same or similar raw inputs, and are produced using the same or similar manufacturing processes. Additionally, the Products' labeling and advertising all misrepresent the Products as free of harmful ingredients like heavy metals, free of significant levels of heavy metals, and safe for ordinary and regular use, and fail to disclose that the Products contain (or risk containing) significant and unsafe levels of heavy metals contrary to advertising. The Products are also all sold, manufactured, distributed or otherwise supplied by Defendant.

## VI. TOLLING OF THE STATUTE OF LIMITATIONS AND DELAYED DISCOVERY

90. All applicable statutes of limitations have been tolled by the delayed discovery doctrine. Plaintiff and Class Members could not have reasonably discovered Defendant's practice of introducing Products latent with heavy metals at significant and unsafe levels into the marketplace, at any time prior to commencing this class action litigation.

91. A reasonable consumer purchasing Defendant's Products would simply believe that the Products are free of detectable, significant, and unsafe levels of heavy metals linked to negative health conditions. Nothing in Defendant's marketing or advertising of the Products would lead a reasonable consumer to suspect the existence or potential existence of carcinogenic or toxic heavy metals, let alone at significant and dangerous levels.

92. No reasonable consumer could have independently discovered that Defendant's Products are latent with toxins, including at dangerous levels. Like Plaintiff, the reasonable consumer does not have access to sophisticated scientific resources, nor is the reasonable consumer trained to test the Products for toxins and evaluate their comparative safety. Relying on Defendant's representations of the quality and characteristics of the Products as safe for ordinary use, Plaintiff nor any reasonable consumer knew such scientific testing was needed.

CLASS ACTION COMPLAINT                                    **EXHIBIT 3, PAGE 32**

93. Plaintiff did not learn of the presence or potential presence of heavy metals in the Products as alleged herein until shortly before commencing this action.

94. As a result, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

### FIRST CAUSE OF ACTION

### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (UCL)

### (Cal. Bus. & Prof. Code §§ 17200, et seq.)

### (On Behalf of the California Class)

95. Plaintiff restates the preceding allegations as if set forth herein.

96. For purposes of this claim, the "Class" refers to the California Class.

97. California Business and Professions Code section 17200 et seq., known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any "unfair or fraudulent business act or practice" as well as "unfair, deceptive, untrue or misleading advertising."

*Fraudulent*

98. Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public.

99. Reasonable consumers are likely to be deceived by Defendant's conduct as alleged above.

100. As detailed above, the representations on labeling and in advertising lead reasonable consumers to believe that the Products (1) did not contain or risk containing toxins like heavy metals in any amount, (2) did not contain or risk containing toxins like heavy metals in significant or potentially dangerous amounts, and (3) could not increase the negative health risks associated with heavy metals consumption if consumed regularly.

101. In truth, the Products contain or risk containing detectable and significant levels of heavy metals. Additionally, the Products are dangerous because they contain or risk containing unsafe levels of heavy metals and therefore are of an inferior quality and trustworthiness and do not contain the qualities and characteristics as represented.

CLASS ACTION COMPLAINT    **EXHIBIT 3, PAGE 33**

102.    A significant portion of the general consuming public or of targeted consumers, acting reasonably under the circumstances, would be misled by Defendant's representations and omissions of the Products' qualities and characteristics.

103.    Given Defendant's advertising, reasonable consumers do not expect Defendant would encourage exposure to high levels of heavy metals like arsenic through a product intended to be consumed repeatedly, including for adults and children. Heavy metals provide no benefits and should be avoided.

104.    Reasonable consumers consider the presence of heavy metals a material fact when choosing healthier snack alternatives.

105.    Defendant also omitted and failed to disclose material information that is contrary to Defendant's affirmative representations. Specifically, Defendant failed to disclose that the Products contain or risk containing detectable and significant levels of heavy metals. Defendant could have and should have prominently disclosed the omitted information on labeling and point-of-sale advertising. Had Defendant disclosed the omitted information, Plaintiff and reasonable consumers would have been aware of it.

106.    As such, Defendant's deceptive acts are likely to mislead consumers acting reasonably under the circumstances. Defendant is aware of the raw inputs used to manufacture the Products and therefore is aware of the overall quality and characteristics of its products. Yet, Defendant represents to consumers that the Products have qualities or characteristics they do not and/or makes material omissions to induce consumer purchase.

107.    Absent Defendant's misrepresentations, Plaintiff and the Class would not have purchased the Products they purchased from Defendant, or, at minimum, they would not have paid as much for the Products as they ultimately did. Plaintiff and the Class's reliance was a substantial factor in causing them harm.

108.    Plaintiff and the Class would not have purchased the Products, or at minimum would have paid less for them, had they known that the Products contained (or risked containing) any amount of heavy metals like arsenic.

CLASS ACTION COMPLAINT                **EXHIBIT 3, PAGE 34**

109.    Plaintiff and the Class would not have purchased the Products, or at minimum would have paid less for them, had they known that the Products contained (or risked containing) significant or unsafe levels of heavy metals like arsenic.

110.    Had the omitted information been disclosed, Plaintiff and the Class would have been aware of it and reasonably would have behaved differently. Among other things, they would not have purchased the Products they purchased from Defendant, or, at minimum, would not have paid as much for the items as they did.

111.    As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff and members of the Class.

**Unfairness**

112.    Under the UCL, a business act or practice is "unfair" if its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

113.    Defendant's conduct was and continues to be of no benefit to reasonable consumers. It is misleading, unfair, unlawful, and is injurious to consumers. It is also against public policy, as it harms fair competition. For example, the federal Lanham Act includes prohibitions on "commercial advertising or promotion" that "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 41 U.S.C. § 1125(a). Defendant is siphoning sales away from sellers, manufacturers, and distributors who compete fairly and do not materially misrepresent their Products to consumers. Further, there is no benefit to consumers who pay for Defendant's Products containing (or risk containing) detectible and significant levels of heavy metals when the Products are advertised to the contrary.

114.    The harm to Plaintiff and members of the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the unfair conduct described herein. Indeed, Defendant could have removed the heavy metals from the Products during the manufacturing process, or could have used different raw materials.

28

CLASS ACTION COMPLAINT

**EXHIBIT 3, PAGE 35**

115. As a result of Defendant's unfair business acts and practices, Defendant has and continues to unfairly obtain money from Plaintiff and members of the proposed Class.

***Unlawful***

116. A cause of action may be brought under the "unlawful" prong of the UCL if a practice violates another law. Such action borrows violations of other laws and treats these violations as unlawful practices independently actionable under the UCL.

117. By injecting into the stream of commerce Products containing or at risk of containing heavy metals, and making material misrepresentations about the Products, as alleged above, Defendant engaged in unlawful business acts and practices in violation of the UCL and predicate state laws. As described herein, Defendant violated (1) the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq.; (2) the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq., and (3) Cal. Health & Safety Code § 110100(a) and Cal. Health & Safety Code § 110105.

118. Plaintiff, individually and on behalf of the Class, seeks restitution and restitutionary disgorgement of all moneys received by Defendant through the conduct described above.

119. Plaintiff, individually and on behalf of the Class, seeks an injunction from this Court prohibiting Defendant from engaging in the patterns and practices described herein, including putting a stop to the misleading representations about the Products and the sale, manufacturing, or distribution of the Products containing or at risk of containing the levels of heavy metals alleged in this Complaint. Plaintiff and Class Members are entitled to injunctive relief. On information and belief, the dissemination of Defendant's Products are ongoing.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT (CLRA)

### (Cal. Civ. Code §§ 1750, *et seq.*)

### (On Behalf of the California Class)

120. Plaintiff restates the preceding allegations as if set forth herein.

121. For purposes of this claim, the "Class" refers to the California Class.

122. The CLRA prohibits deceptive practices concerning the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

29

CLASS ACTION COMPLAINT

**EXHIBIT 3, PAGE 36**

123. Plaintiff and California Class Members are "consumers" as defined by Civil Code § 1761(d).

124. Defendant is a "person" as defined by Civil Code § 1761(c).

125. The Products qualify as "goods" as defined by Civil Code § 1761(a).

126. Plaintiff and the Class Members' purchase of the Products are "transactions" as defined by Civil Code § 1761(e).

127. The CLRA deems the following "unfair methods of competition and unfair or deceptive acts or practices listed in this subdivision undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer" as unlawful.

(a) "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have." Civil Code § 1770(a)(5);

(b) "Representing that goods … are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Civil Code § 1770(a)(7);

(c) "Advertising goods or services with intent not to sell them as advertised." Civil Code § 1770(a)(9); and

(d) "Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not." Civil Code § 1770(a)(16).

128. Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of Civil Code §§ 1770(a)(5), (a)(7), (a)(9) and (a)(16) when it represented, through its advertising and other express representations, that the Products had characteristics that they did not actually have and were of a quality that they are not.

129. As detailed above, the representations on labeling and in advertising lead reasonable consumers to believe the Products (1) did not contain or risk containing toxins like heavy metals in any amount, (2) did not contain or risk containing toxins like heavy metals in significant or potentially

CLASS ACTION COMPLAINT

**EXHIBIT 3, PAGE 37**

dangerous amounts, and (3) could not increase the negative health risks associated with heavy metals consumption if consumed regularly.

130. In truth, the Products contain or risk containing detectable and significant levels of heavy metals. Additionally, the Products are dangerous because they contain or risk containing unsafe levels of heavy metals and therefore are of an inferior quality and trustworthiness and do not contain the qualities and characteristics as represented.

131. A significant portion of the general consuming public or of targeted consumers, acting reasonably under the circumstances, would be misled by Defendant's representations and omissions of the Products' qualities and characteristics.

132. Given Defendant's advertising, reasonable consumers do not expect Defendant would encourage exposure to high levels of heavy metals like arsenic through a product intended to be consumed repeatedly, including for adults and children. Heavy metals provide no benefits and should be avoided.

133. Reasonable consumers consider the presence of heavy metals a material fact when choosing healthier snack alternatives.

134. Defendant also omitted and failed to disclose material information that is contrary to Defendant's affirmative representations. Specifically, Defendant failed to disclose that the Products contain or risk containing detectable and significant levels of heavy metals. Defendant could have and should have prominently disclosed the omitted information on labeling and point-of-sale advertising. Had Defendant disclosed the omitted information, Plaintiff and reasonable consumers would have been aware of it.

135. As such, Defendant's deceptive acts are likely to mislead consumers acting reasonably under the circumstances. Defendant is aware of the raw inputs used to manufacture the Products and therefore is aware of the overall quality and characteristics of its products. Yet, Defendant represents to consumers that the Products have qualities or characteristics they do not and/or makes material omissions to induce consumer purchase.

136. Absent Defendant's misrepresentations, Plaintiff and the Class would not have purchased the Products they purchased from Defendant, or, at minimum, they would not have paid as much for the

CLASS ACTION COMPLAINT

**EXHIBIT 3, PAGE 38**

Products as they ultimately did. Plaintiff and the Class's reliance was a substantial factor in causing them harm.

137.    Plaintiff and the Class would not have purchased the Products, or at minimum would have paid less for them, had they known that the Products contained (or risked containing) any amount of heavy metals like arsenic.

138.    Plaintiff and the Class would not have purchased the Products, or at minimum would have paid less for them, had they known that the Products contained (or risked containing) significant or unsafe levels of heavy metals like arsenic.

139.    Had the omitted information been disclosed, Plaintiff and the Class would have been aware of it and reasonably would have behaved differently. Among other things, they would not have purchased the Products they purchased from Defendant, or, at minimum, would not have paid as much for the items as they did.

140.    As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff and members of the Class.

141.    Plaintiff, through counsel, is providing notice to Defendant pursuant to Cal. Civ. Code § 1782(a) via certified mail. Because the 30-day period has not expired, at this time Plaintiff only seeks injunctive relief under the CLRA.

### THIRD CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (Cal. Civ. Code § 1790, *et seq.*)

### (On Behalf of the California Class)

142.    Plaintiff restates the preceding allegations as if set forth herein.

143.    For purposes of this claim, the "Class" refers to the California Class.

144.    Under Cal. Commercial Code § 2314, every sale of consumer goods in the State of California is accompanied by both a manufacturer's and retailer seller's implied warranty that the goods are merchantable.

145.    Defendant impliedly warranted to buyers that the Products were merchantable and thus conformed to the promises or affirmation of fact made on the container or label.

CLASS ACTION COMPLAINT                    **EXHIBIT 3, PAGE 39**

146. Defendant breached these implied warranties as described above. Specifically, as explained above, the Products are represented as free from significant levels of toxins and contaminants like heavy metals, and did not contain or risk containing heavy metals in any amount, let alone in excess of thresholds deemed significant and/or unsafe.

147. The Products were defective at the time of sale. The issue as described in this Complaint was latent in the Products and not discoverable at the time of sale.

148. As a direct and proximate cause of Defendant's breach of the implied warranty of merchantability, Plaintiff and Class Members have been injured and harmed because they would not have purchased the Products (or at minimum would have paid much less) if they knew the truth, namely, that the Products were not as labeled.

149. Plaintiff and the Class seek compensatory damages, attorney's fees, costs, and any other just and proper relief available under law.

## FOURTH CAUSE OF ACTION

### VIOLATION OF STATE CONSUMER PROTECTION STATUTES

### (On Behalf of the Multi-State Consumer Protection Class)

150. Plaintiff restates the preceding allegations as if set forth herein.

151. For purposes of this claim "Class" refers to the Multi-State Consumer Protection Class.

152. As detailed above, the representations on labeling and in advertising lead reasonable consumers to believe the Products (1) did not contain or risk containing toxins like heavy metals in any amount, (2) did not contain or risk containing toxins like heavy metals in significant or potentially dangerous amounts, and (3) could not increase the negative health risks associated with heavy metals consumption if consumed regularly.

153. In truth, the Products contain or risk containing detectable and significant levels of heavy metals. Additionally, the Products are dangerous because they contain or risk containing unsafe levels of heavy metals and therefore are of an inferior quality and trustworthiness and do not contain the qualities and characteristics as represented.

CLASS ACTION COMPLAINT          **EXHIBIT 3, PAGE 40**

154. A significant portion of the general consuming public or of targeted consumers, acting reasonably under the circumstances, would be misled by Defendant's representations and omissions of the Products' qualities and characteristics.

155. Given Defendant's advertising, reasonable consumers do not expect Defendant would encourage exposure to high levels of heavy metals like arsenic through a product intended to be consumed repeatedly, including for adults and children. Heavy metals provide no benefits and should be avoided.

156. Reasonable consumers consider the presence of heavy metals a material fact when choosing healthier snack alternatives.

157. Defendant also omitted and failed to disclose material information that is contrary to Defendant's affirmative representations. Specifically, Defendant failed to disclose that the Products contain or risk containing detectable and significant levels of heavy metals. Defendant could have and should have prominently disclosed the omitted information on labeling and point-of-sale advertising. Had Defendant disclosed the omitted information, Plaintiff and reasonable consumers would have been aware of it.

158. As such, Defendant's deceptive acts are likely to mislead consumers acting reasonably under the circumstances. Defendant is aware of the raw inputs used to manufacture the Products and therefore is aware of the overall quality and characteristics of its products. Yet, Defendant represents to consumers that the Products have qualities or characteristics they do not and/or makes material omissions to induce consumer purchase.

159. Absent Defendant's misrepresentations, Plaintiff and the Class would not have purchased the Products they purchased from Defendant, or, at minimum, they would not have paid as much for the Products as they ultimately did. Plaintiff and the Class's reliance was a substantial factor in causing them harm.

160. Plaintiff and the Class would not have purchased the Products, or at minimum would have paid less for them, had they known that the Products contained (or risked containing) any amount of heavy metals like arsenic.

34

CLASS ACTION COMPLAINT

**EXHIBIT 3, PAGE 41**

161.   Plaintiff and the Class would not have purchased the Products, or at minimum would have paid less for them, had they known that the Products contained (or risked containing) significant or unsafe levels of heavy metals like arsenic.

162.   Had the omitted information been disclosed, Plaintiff and the Class would have been aware of it and reasonably would have behaved differently. Among other things, they would not have purchased the Products they purchased from Defendant, or, at minimum, would not have paid as much for the items as they did.

163.   As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff and members of the Class.

**FIFTH CAUSE OF ACTION**

**UNJUST ENRICHMENT/QUASI-CONTRACT**

**(On Behalf of the Nationwide Class and alternatively the California Class)**

164.   Plaintiff restates the preceding allegations as if set forth herein.

165.   By its wrongful acts and omissions, Defendant was unjustly enriched at the expense of and to the detriment of Plaintiff and the Class and/or while Plaintiff and the Class were unjustly deprived. Defendant's unlawful and deceptive misrepresentations induced Plaintiff and the Class to spend money they otherwise would not have spent, purchase items they otherwise would not have purchased, and/or spend more money for a product than they otherwise would have absent such unlawful practices.

166.   Plaintiff and members of the Class also conferred a monetary benefit on Defendant in the form of Defendant's profits generated by the deceptive misrepresentations and omissions. Defendant profited from making false representations and omissions of material fact.

167.   On behalf of the Class, Plaintiff seeks restitution from Defendant and an order disgorging payments and profits obtained by Defendant from Plaintiff and the Class.

**SIXTH CAUSE OF ACTION**

**NEGLIGENT MISREPRESENTATION**

**(On Behalf of the Nationwide Class and alternatively the California Class)**

168.   Plaintiff restates the preceding allegations as if set forth herein.

35

CLASS ACTION COMPLAINT

169. For purposes of this claim "Class" refers to the Nationwide Class and alternatively the California Class.

170. This claim is pleaded in the alternative to Plaintiff's remaining claims.

171. As detailed above, the representations on labeling and in advertising lead reasonable consumers to believe the Products (1) did not contain or risk containing toxins like heavy metals in any amount, (2) did not contain or risk containing toxins like heavy metals in significant or potentially dangerous amounts, and (3) could not increase the negative health risks associated with heavy metals consumption if consumed regularly.

172. In truth, the Products contain or risk containing detectable and significant levels of heavy metals. Additionally, the Products are dangerous because they contain or risk containing unsafe levels of heavy metals and therefore are of an inferior quality and trustworthiness and do not contain the qualities and characteristics as represented.

173. A significant portion of the general consuming public or of targeted consumers, acting reasonably under the circumstances, would be misled by Defendant's representations of the Products' qualities and characteristics.

174. Given Defendant's advertising, reasonable consumers do not expect Defendant would encourage exposure to high levels of heavy metals like arsenic through a product intended to be consumed repeatedly, including for adults and children. Heavy metals provide no benefits and should be avoided.

175. Reasonable consumers consider the presence of heavy metals a material fact when choosing healthier snack alternatives.

176. As such, Defendant's deceptive acts are likely to mislead consumers acting reasonably under the circumstances. Defendant is aware of the raw inputs used to manufacture the Products and therefore is aware of the overall quality and characteristics of its products. Yet, Defendant represents to consumers that the Products have qualities or characteristics they do not.

177. Absent Defendant's misrepresentations, Plaintiff and the Class would not have purchased the Products they purchased from Defendant, or, at minimum, they would not have paid as much for the Products as they ultimately did. Plaintiff and the Class's reliance was a substantial factor in causing them harm.

36

CLASS ACTION COMPLAINT

**EXHIBIT 3, PAGE 43**

178.   Plaintiff and the Class would not have purchased the Products, or at minimum would have paid less for them, had they known that the Products contained (or risked containing) any amount of heavy metals like arsenic.

179.   Plaintiff and the Class would not have purchased the Products, or at minimum would have paid less for them, had they known that the Products contained (or risked containing) significant or unsafe levels of heavy metals like arsenic.

180.   As explained above, Defendant knew (or at minimum should have known) that its representations were false when made. Defendant had no good faith or reasonable basis to believe that its representations were true when made.

181.   As a result of Defendant's misleading business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff and members of the Class.

182.   As a direct and proximate result of the above, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully prays for following relief:

    a.  Certification of this case as a class action on behalf of the proposed Class and any subclasses defined above, appointment of Plaintiff as Class representative, and appointment of counsel as Class counsel;

    b.  An award to Plaintiff and the proposed Class and subclasses of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits Defendant obtained from Plaintiff and the proposed Class as a result of its unlawful, unfair and fraudulent business practices described herein;

    c.  An injunction ordering Defendant to cease the manufacturing, distribution, and sale of the Products as complained of herein, and to correct its misrepresentations/omissions;

    d.  An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendant's conduct where available;

    e.  An award of nominal, punitive, and statutory damages where available;

CLASS ACTION COMPLAINT

**EXHIBIT 3, PAGE 44**

f.   Reasonable expenses and attorneys' fees where available;

g.   Pre- and post-judgment interest, to the extent allowable; and

h.   For such further relief that the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of the proposed Class, demands a trial by jury for all claims so triable.

Dated: February 18, 2026                              Respectfully submitted,

                                                      */s/ Alexander E. Wolf*
                                                      Alexander E. Wolf (SBN 299775)
                                                      awolf@milberg.com
                                                      **MILBERG, PLLC**
                                                      280 South Beverly Drive, PH
                                                      Beverly Hills, CA 90212
                                                      Tel: (872) 365-7060

                                                      Trenton R. Kashima (SBN 291405)
                                                      tkashima@brysonpllc.com
                                                      **BRYSON HARRIS SUCIU
                                                      & DEMAY PLLC**
                                                      19800 MacArthur Blvd., Suite 270
                                                      Irvine, CA 92612
                                                      (212) 946-9389

38
CLASS ACTION COMPLAINT                    **EXHIBIT 3, PAGE 45**

# EXHIBIT 4

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Alexander E. Wolf (SBN 299775) Milberg, PLLC 280 S. Beverly Drive, Penthouse, Beverly Hills, CA 90212 | *FOR COURT USE ONLY* |

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Alexander E. Wolf (SBN 299775)  Milberg, PLLC
280 S. Beverly Drive, Penthouse, Beverly Hills, CA 90212

TELEPHONE NO.: 872-365-7060          FAX NO. :
EMAIL ADDRESS: awolf@milberg.com
ATTORNEY FOR *(Name):* Plaintiff, Tricia Huffman

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES
 STREET ADDRESS: 111 N. Hill Street
 MAILING ADDRESS: 111 N. Hill Street
 CITY AND ZIP CODE: Los Angeles, CA 90012
 BRANCH NAME: Stanley Mosk Courthouse

**Electronically FILED by Superior Court of California, County of Los Angeles 2/18/2026 1:05 PM David W. Slayton, Executive Officer/Clerk of Court, By S. Cwikla, Deputy Clerk**

CASE NAME:
 Tricia Huffman v. SmartSweets, Inc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $35,000) · [ ] **Limited** (Amount demanded is $35,000 or less) | [ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | **26STCV05079**<br>JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[x] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [x] is  [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [x] Substantial amount of documentary evidence
   d. [x] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify):* 6
5. This case [x] is  [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: February 18, 2026
Alexander E. Wolf
_____          ► _____
(TYPE OR PRINT NAME)                                (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2024]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

**EXHIBIT 4, PAGE 47**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET                          CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner
        Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic
        relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
        harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

---

CM-010 [Rev. January 1, 2024]                    **CIVIL CASE COVER SHEET**                    Page 2 of 2

**EXHIBIT 4, PAGE 48**

| SHORT TITLE Huffman v. SmartSweets, Inc. | CASE NUMBER 26STCV05079 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

### Applicable Reasons for Choosing Courthouse Location (Column C)

| | | | |
|---|---|---|---|
| 1. | Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7. | Location where petitioner resides. |
| 2. | Permissive filing in Central District. | 8. | Location wherein defendant/respondent functions wholly. |
| 3. | Location where cause of action arose. | 9. | Location where one or more of the parties reside. |
| 4. | Location where bodily injury, death or damage occurred. | 10. | Location of Labor Commissioner Office. |
| 5. | Location where performance required, or defendant resides. | 11. | Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6. | Location of property or permanently garaged vehicle. | | |

| | A Civil Case Cover Sheet Case Type | B Type of Action (check only one) | C Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☑ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

| | | |
|---|---|---|
| LASC CIV 109 Rev. 01/23 For Mandatory Use | CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION | LASC Local Rule 2.3 |

**EXHIBIT 4, PAGE 49**

| SHORT TITLE Huffman v. SmartSweets, Inc. | CASE NUMBER |
|---|---|

| | **A** Civil Case Cover Sheet Case Type | **B** Type of Action (check only one) | **C** Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Other Personal Injury/ Property Damage/ Wrongful Death** | | ☐ 2307 Construction Accidents | 1, 4 |
| | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ 1601 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ 3601 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract / Warranty (06) (not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | Insurance Coverage (18) | ☐ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

**EXHIBIT 4, PAGE 50**

| SHORT TITLE Huffman v. SmartSweets, Inc. | CASE NUMBER |
|---|---|

| | **A** Civil Case Cover Sheet Case Type | **B** Type of Action (check only one) | **C** Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Contract** (Continued) | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/ negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation                    Number of Parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | ☐ 2602 Quiet Title | 2, 6 |
| | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

LASC CIV 109 Rev. 01/23

For Mandatory Use

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

LASC Local Rule 2.3

**EXHIBIT 4, PAGE 51**

| SHORT TITLE | CASE NUMBER |
|---|---|
| Huffman v. SmartSweets, Inc. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation** (Continued) | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4204 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

LASC CIV 109 Rev. 01/23
For Mandatory Use

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

LASC Local Rule 2.3

**EXHIBIT 4, PAGE 52**

| SHORT TITLE<br>Huffman v. SmartSweets, Inc. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON:<br>☑ 1. ☐ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11 | ADDRESS: |
|---|---|
| CITY: | STATE: | ZIP CODE: | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the ___Central Judicial District___ District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated: 02/18/2026 _____

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (01/23).
5. Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6. A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.

LASC CIV 109 Rev. 01/23          CIVIL CASE COVER SHEET ADDENDUM          LASC Local Rule 2.3
For Mandatory Use                    AND STATEMENT OF LOCATION

**EXHIBIT 4, PAGE 53**

# EXHIBIT 5

Alexander E. Wolf (SBN 299775)
awolf@milberg.com
**MILBERG, PLLC**
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212
Tel: 872-365-7060

Trenton R. Kashima (SBN 291405)
tkashima@brysonpllc.com
**BRYSON HARRIS SUCIU
& DEMAY PLLC**
19800 MacArthur Blvd., Suite 270
Irvine, CA 92612
Tel: (212) 946-9389

Attorneys for Plaintiff

Electronically FILED by
Superior Court of California,
County of Los Angeles
2/18/2026 1:05 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By S. Cwikla, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| TRICIA HUFFMAN, individually and on behalf of all similarly situated persons,<br><br>                     Plaintiff,<br><br>     v.<br><br>SMARTSWEETS, INC.<br><br>                     Defendant. | CASE NO.:  26STCV05079<br><br>**CLRA VENUE DECLARATION** |

**EXHIBIT 5, PAGE 55**

I, Alexander Wolf, declare as follows:

1.      I am an attorney of record in this matter and an individual over eighteen years of age.  I make this declaration as required by California Civil Code § 1780(d).

2.      The Complaint in this action is filed in a proper place because a substantial portion of the transactions alleged in the Complaint occurred in this county for at least one plaintiff. Specifically, I am informed that plaintiff Tricia Huffman purchased Smart Sweets products within Los Angeles County, and I have viewed proof of such purchase. I am also informed that Ms. Huffman resides in this county. As such, it is my understanding that Defendant does business in this county.

3.      I declare under penalty of perjury under the laws of California and the United States that the foregoing is to my knowledge true and correct.


        Dated: February 18, 2026

        _____

                        Alexander Wolf

2
CLRA VENUE DECLARATION

**EXHIBIT 5, PAGE 56**

# EXHIBIT 6

 **Superior Court of California, County of Los Angeles**
**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE**

---

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS MUST SERVE THIS ADR INFORMATION PACKAGE ON ANY NEW PARTIES NAMED TO THE ACTION WITH THE CROSS-COMPLAINT.**

---

## WHAT IS ADR?

Alternative Dispute Resolution (ADR) helps people find solutions to their legal disputes without going to trial. The Court offers a variety of ADR resources and programs for various case types.

## TYPES OF ADR

- **Negotiation.** Parties may talk with each other about resolving their case at any time. If the parties have attorneys, they will negotiate for their clients.

- **Mediation.** Mediation may be appropriate for parties who want to work out a solution but need help from a neutral third party. A mediator can help the parties reach a mutually acceptable resolution. Mediation may be appropriate when the parties have communication problems and/or strong emotions that interfere with resolution. Mediation may not be appropriate when the parties want a public trial, lack equal bargaining power, or have a history of physical or emotional abuse.

- **Arbitration.** Less formal than a trial, parties present evidence and arguments to an arbitrator who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision.

- **Settlement Conferences.** A judge or qualified settlement officer assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Mandatory settlement conferences may be ordered by a judicial officer. In some cases, voluntary settlement conferences may be requested by the parties.

## ADVANTAGES OF ADR

- **Save time and money.** Utilizing ADR methods is often faster than going to trial and parties can save on court costs, attorney's fees, and other charges.
- **Reduce stress and protect privacy.** ADR is conducted outside of a courtroom setting and does not involve a public trial.
- **Help parties maintain control.** For many types of ADR, parties may choose their ADR process and provider.

## DISADVANTAGES OF ADR

- **Costs.** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial.** ADR does not provide a public trial or decision by a judge or jury.

## WEBSITE RESOURCES FOR ADR

- **Los Angeles Superior Court ADR website:** www.lacourt.org/ADR
- **California Courts ADR website:** www.courts.ca.gov/programs-adr.htm

**Los Angeles Superior Court ADR Programs for Unlimited Civil (cases valued over $35,000)**
Litigants should closely review the requirements for each program and the types of cases served.

- **Civil Mediation Vendor Resource List.** Litigants in unlimited civil cases may use the Civil Mediation Vendor Resource List to arrange voluntary mediations without Court referral or involvement. The Resource List includes organizations that have been selected through a formal process that have agreed to provide a limited number of low-cost or no-cost mediation sessions with attorney mediators or retired judges. Organizations may accept or decline cases at their discretion. Mediations are scheduled directly with these organizations and are most often conducted through videoconferencing. The organizations on the Resource List target active civil cases valued between $50,000-$250,000, though cases outside this range may be considered. *For more information and to view the list of vendors and their contact information, download the Resource List Flyer and FAQ Sheet at www.lacourt.org/ADR/programs.html.*
  **RESOURCE LIST DISCLAIMER:** The Court provides this list as a public service. The Court does not endorse, recommend, or make any warranty as to the qualifications or competency of any provider on this list. Inclusion on this list is based on the representations of the provider. The Court assumes no responsibility or liability of any kind for any act or omission of any provider on this list.

- **Mediation Volunteer Panel (MVP).** Unlimited civil cases referred by judicial officers to the Court's Mediation Volunteer Panel (MVP) are eligible for three hours of virtual mediation at no cost with a qualified mediator from the MVP. Through this program, mediators volunteer preparation time and three hours of mediation at no charge. If the parties agree to continue the mediation after three hours, the mediator may charge their market hourly rate. When a case is referred to the MVP, the Court's ADR Office will provide information and instructions to the parties. The Notice directs parties to meet and confer to select a mediator from the MVP or they may request that the ADR Office assign them a mediator. The assigned MVP mediator will coordinate the mediation with the parties. *For more information or to view MVP mediator profiles, visit the Court's ADR webpage at www.lacourt.org/ADR or email ADRCivil@lacourt.org.*

- **Mediation Center of Los Angeles (MCLA) Referral Program.** The Court may refer unlimited civil cases to mediation through a formal contract with the Mediation Center of Los Angeles (MCLA), a nonprofit organization that manages a panel of highly qualified mediators. Cases must be referred by a judicial officer or the Court's ADR Office. The Court's ADR Office will provide the parties with information for submitting the case intake form for this program. MCLA will assign a mediator based on the type of case presented and the availability of the mediator to complete the mediation in an appropriate time frame. MCLA has a designated fee schedule for this program. *For more information, contact the Court's ADR Office at ADRCivil@lacourt.org.*

- **Resolve Law LA (RLLA) Virtual Mandatory Settlement Conferences (MSC).** Resolve Law LA provides three-hour virtual Mandatory Settlement Conferences at no cost for personal injury and non-complex employment cases. Cases must be ordered into the program by a judge pursuant to applicable Standing Orders issued by the Court and must complete the program's online registration process. The program leverages the talent of attorney mediators with at least 10 years of litigation experience who volunteer as settlement officers. Each MSC includes two settlement officers, one each from the plaintiff and defense bars. Resolve Law LA is a joint effort of the Court, Consumer Attorneys Association of Los Angeles County (CAALA), Association of Southern California Defense Counsel (ASCDC), Los Angeles Chapter of the American Board of Trial Advocates (LA-ABOTA), Beverly Hills Bar Foundation (BHBF), California Employment Lawyers Association (CELA), and Los Angeles County Bar Association (LACBA). *For more information, visit https://resolvelawla.com.*

**EXHIBIT 6, PAGE 59**

- **Judicial Mandatory Settlement Conferences (MSCs).** Judicial MSCs are ordered by the Court for unlimited civil cases and may be held close to the trial date or on the day of trial. The parties and their attorneys meet with a judicial officer who does not make a decision, but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For more information, visit https://www.lacourt.org/division/civil/CI0047.aspx.

**Los Angeles Superior Court ADR Programs for Limited Civil (cases valued below $35,000)**
Litigants should closely review the requirements for each program and the types of cases served.

- **Dispute Resolution Program Act (DRPA) Day-of-Hearing Mediation.** Through the Dispute Resolution Program Act (DRPA), the Court works with county-funded agencies, including the Los Angeles County Department of Consumer & Business Affairs (DCBA) and the Center for Conflict Resolution (CCR), to provide voluntary day-of-hearing mediation services for small claims, unlawful detainer, limited civil, and civil harassment matters. DCBA and CCR staff and trained volunteers serve as mediators, primarily for self-represented litigants. There is no charge to litigants. *For more information, visit https://dcba.lacounty.gov/countywidedrp.*

- **Temporary Judge Unlawful Detainer Mandatory Settlement Conference Pilot Program.** Temporary judges who have been trained as settlement officers are deployed by the Court to designated unlawful detainer court locations one day each week to facilitate settlement of unlawful detainer cases on the day of trial. For this program, cases may be ordered to participate in a Mandatory Settlement Conference (MSC) by judicial officers at Stanley Mosk, Long Beach, Compton, or Santa Monica. Settlement rooms and forms are available for use on the designated day at each courthouse location. There is no charge to litigants for the MSC. *For more information, contact the Court's ADR Office at ADRCivil@lacourt.org.*

**EXHIBIT 6, PAGE 60**

 **Superior Court of California, County of Los Angeles**

> # ALTERNATIVE DISPUTE RESOLUTION (ADR)
> # INFORMATION PACKAGE
>
> **THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**
>
> **CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

### What is ADR?

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

### Advantages of ADR

- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR

- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

### Main Types of ADR

1. **Negotiation**: Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation**: In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all.  Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

LASC CIV 271 Rev. 02/22
For Mandatory Use

Page 1 of 2

**EXHIBIT 6, PAGE 61**

**How to Arrange Mediation in Los Angeles County**

Mediation for **civil cases** is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

   - **ADR Services, Inc.** Case Manager Elizabeth Sanchez, elizabeth@adrservices.com
     (949) 863-9800
   - **Mediation Center of Los Angeles** Program Manager info@mediationLA.org
     (833) 476-9145

**These organizations cannot accept every case and they may decline cases at their discretion**. They may offer online mediation by video conference for cases they accept. Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

**NOTE: The Civil Mediation Vendor Resource List program does not accept family law, probate or small claims cases.**

b. **Los Angeles County Dispute Resolution Programs**
   https://hrc.lacounty.gov/wp-content/uploads/2020/05/DRP-Fact-Sheet-23October19-Current-as-of-October-2019-1.pdf

   Day of trial mediation programs have been paused until further notice.

   **Online Dispute Resolution (ODR).** Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.

c. Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3. **Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit http://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC)**: MSCs are ordered by the Court and are often held close to the trial date or on the day of trial. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit http://www.lacourt.org/division/civil/C10047.aspx

Los Angeles Superior Court ADR website: http://www.lacourt.org/division/civil/C10109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

LASC CIV 271 Rev. 02/22
For Mandatory Use

**EXHIBIT 6, PAGE 62**

# VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

**EXHIBIT 6, PAGE 63**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

LACIV 229 (Rev 02/15)
LASC Approved 04/11
For Optional Use

**STIPULATION – EARLY ORGANIZATIONAL MEETING**

Page 1 of 2

**EXHIBIT 6, PAGE 64**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at **www.lacourt.org** under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
   (INSERT DATE)                                    (INSERT DATE)
   complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR PLAINTIFF)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

Date:

_____          ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

| LACIV 229 (Rev 02/15) LASC Approved 04/11 | **STIPULATION – EARLY ORGANIZATIONAL MEETING** | Page 2 of 2 |
|---|---|---|
| Print  Save | | |

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – DISCOVERY RESOLUTION** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

LACIV 036 (new)
LASC Approved 04/11
For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

Page 1 of 3

**EXHIBIT 6, PAGE 66**

SHORT TITLE:

CASE NUMBER:

iii.   Be filed within two (2) court days of receipt of the Request; and

iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied.  If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

LACIV 036 (new)
LASC Approved 04/11
For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

Page 2 of 3

**EXHIBIT 6, PAGE 67**

SHORT TITLE:                                                          CASE NUMBER:

## The following parties stipulate:

Date:

➢ _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR PLAINTIFF)

Date:

➢ _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR DEFENDANT)

Date:

➢ _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR DEFENDANT)

Date:

➢ _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR DEFENDANT)

Date:

➢ _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR _____ )

Date:

➢ _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR _____ )

Date:

➢ _____
(TYPE OR PRINT NAME)                    (ATTORNEY FOR _____ )

|   Print   |   Save   |                              |   Clear   |

LACIV 036 (new)
LASC Approved 04/11
For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

Page 3 of 3

EXHIBIT 6, PAGE 68

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:   FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

   ☐   Request for Informal Discovery Conference
   ☐   Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

LACIV 094 (new)
LASC Approved 04/11
For Optional Use

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

Print      Save      Clear

EXHIBIT 6 PAGE 69

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

**STIPULATION AND ORDER – MOTIONS IN LIMINE**

**EXHIBIT 6, PAGE 70**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR _____)

➢ _____
(ATTORNEY FOR _____)

➢ _____
(ATTORNEY FOR _____)

## THE COURT SO ORDERS.

Date: _____

_____
JUDICIAL OFFICER

| Print | Save | Clear |
|---|---|---|

LACIV 075 (new)
LASC Approved 04/11

**STIPULATION AND ORDER – MOTIONS IN LIMINE**

Page 2 of 2

**EXHIBIT 6, PAGE 71**

**FILED**

LOS ANGELES SUPERIOR COURT

MAY 1 1 2011

JOHN A. CLARKE, CLERK

BY NANCY NAVARRO, DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

General Order Re                          )    ORDER PURSUANT TO CCP 1054(a),
Use of Voluntary Efficient Litigation     )    EXTENDING TIME TO RESPOND BY
Stipulations                              )    30 DAYS WHEN PARTIES AGREE
                                          )    TO EARLY ORGANIZATIONAL
                                          )    MEETING STIPULATION
                                          )
_____       )

Whereas the Los Angeles Superior Court and the Executive Committee of the Litigation Section of the Los Angeles County Bar Association have cooperated in drafting "Voluntary Efficient Litigation Stipulations" and in proposing the stipulations for use in general jurisdiction civil litigation in Los Angeles County;

Whereas the Los Angeles County Bar Association Litigation Section; the Los Angeles County Bar Association Labor and Employment Law Section; the Consumer Attorneys Association of Los Angeles; the Association of Southern California Defense Counsel; the Association of Business Trial Lawyers of Los Angeles; and the California Employment Lawyers Association all "endorse the goal of promoting efficiency in litigation, and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases;"

-1-

ORDER PURSUANT TO CCP 1054(a)

**EXHIBIT 6, PAGE 72**

Whereas the Early Organizational Meeting Stipulation is intended to encourage cooperation among the parties at an early stage in litigation in order to achieve litigation efficiencies;

Whereas it is intended that use of the Early Organizational Meeting Stipulation will promote economic case resolution and judicial efficiency;

Whereas, in order to promote a meaningful discussion of pleading issues at the Early Organizational Meeting and potentially to reduce the need for motions to challenge the pleadings, it is necessary to allow additional time to conduct the Early Organizational Meeting before the time to respond to a complaint or cross complaint has expired;

Whereas Code of Civil Procedure section 1054(a) allows a judge of the court in which an action is pending to extend for not more than 30 days the time to respond to a pleading "upon good cause shown";

Now, therefore, this Court hereby finds that there is good cause to extend for 30 days the time to respond to a complaint or to a cross complaint in any action in which the parties have entered into the Early Organizational Meeting Stipulation. This finding of good cause is based on the anticipated judicial efficiency and benefits of economic case resolution that the Early Organizational Meeting Stipulation is intended to promote.

IT IS HEREBY ORDERED that, in any case in which the parties have entered into an Early Organizational Meeting Stipulation, the time for a defending party to respond to a complaint or cross complaint shall be extended by the 30 days permitted

-2-

ORDER PURSUANT TO CCP 1054(a)

**EXHIBIT 6, PAGE 73**

by Code of Civil Procedure section 1054(a) without further need of a specific court order.

DATED: _May 11, 2011_   _____
Carolyn B. Kuhl, Supervising Judge of the
Civil Departments, Los Angeles Superior Court

-3-

ORDER PURSUANT TO CCP 1054(a)

**EXHIBIT 6, PAGE 74**

# EXHIBIT 7

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
Central District, Spring Street Courthouse, Department 1

**26STCV05079**                                                      March 6, 2026
**TRICIA HUFFMAN vs SMARTSWEETS, INC.**                               9:21 AM

Judge: Honorable Theresa M. Traber          CSR: None
Judicial Assistant: A. He                   ERM: None
Courtroom Assistant: None                   Deputy Sheriff: None

---

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

---

**NATURE OF PROCEEDINGS:** Court Order Scheduling Initial Status Conference

By this order, the Court determines this case to be Complex according to Rule 3.400 of the California Rules of Court. The Clerk's Office has assigned this case to this department for all purposes.

Pursuant to Government Code Sections 70616(a) and 70616(b), a single complex fee of one thousand dollars ($1,000.00) must be paid on behalf of all plaintiffs. For defendants, a complex fee of one thousand dollars ($1,000.00) must be paid for each defendant, intervenor, respondent or adverse party, not to exceed, for each separate case number, a total of eighteen thousand dollars ($18,000.00), collected from all defendants, intervenors, respondents, or adverse parties. All such fees are ordered to be paid to Los Angeles Superior Court, within ten (10) days of service of this order.

By this order, the Court stays the case, except for service of the Summons and Complaint. The stay continues at least until the Initial Status Conference. Initial Status Conference is set for 06/12/2026 at 08:30 AM in this department. At least ten (10) days prior to the Initial Status Conference, counsel for all parties must discuss the issues set forth in the Initial Status Conference Order issued this date. Counsel must file a Joint Initial Status Conference Response Statement five (5) court days before the Initial Status Conference.

The Initial Status Conference Order, served concurrently with this Minute Order, is to help the Court and the parties manage this complex case by developing an orderly schedule for briefing, discovery, and court hearings. The parties are informally encouraged to exchange documents and information as may be useful for case evaluation.

Responsive pleadings shall not be filed until further Order of the Court. Parties must file a Notice of Appearance in lieu of an Answer or other responsive pleading. The filing of a Notice of Appearance shall not constitute a waiver of any substantive or procedural challenge to the Complaint. Nothing in this order stays the time for filing an Affidavit of Prejudice pursuant to

---

Minute Order                                                      Page 1 of 2

**EXHIBIT 7, PAGE 76**

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
Central District, Spring Street Courthouse, Department 1

**26STCV05079**                                                              March 6, 2026
**TRICIA HUFFMAN vs SMARTSWEETS, INC.**                                        9:21 AM

Judge: Honorable Theresa M. Traber          CSR: None
Judicial Assistant: A. He                   ERM: None
Courtroom Assistant: None                   Deputy Sheriff: None

Code of Civil Procedure Section 170.6. Nothing in this order stays the filing of an Amended Complaint pursuant to Labor Code Section 2699.3(a)(2)(C) by a plaintiff wishing to add a Private Attorney General Act ("PAGA") claim.

Parties shall file all documents in conformity with Superior Court of Los Angeles County Local Rule 3.4, particularly the provisions requiring bookmarking (Local Rule 3.4(f)(2-5)).

For efficiency in communication with counsel, the complex program requires the parties in every new case to use an approved third-party cloud service that provides an electronic message board. In order to facilitate communication with counsel prior to the Initial Status Conference, the parties must sign-up with the e-service provider at least ten (10) court days in advance of the Initial Status Conference and advise the Court which provider was selected.

This Complex Courtroom does not use Los Angeles Superior Court's Court Reservation ("CRS") portal to reserve motion hearing dates. Rather, counsel may secure dates by calling the Courtroom Assistant at 213-310-70xx with the "xx" being the Department number, e.g. Dept. 1 is 01 and Dept. 10 is 10.

Court reporters are not provided for hearings or trials. The parties should make their own arrangements for any hearing where a transcript is desired.

If you believe a party or witness will need an interpreter, see the court's website for information on how to make such a request in a timely manner. https://www.lacourt.ca.gov/pages/lp/language-access-services/tp/request-a-court-interpreter

Counsel are directed to access the following link for further information on procedures in the Complex litigation Program courtrooms: https://www.lacourt.ca.gov/pages/lp/civil/tp/civil-case-types-and-specialty-courtrooms/cp/complex-civil-litigation.

The plaintiff must serve a copy of this minute order and the attached Initial Status Conference Order on all parties forthwith and file a Proof of Service in this department within seven (7) days of service.

Certificate of Service is attached.

Minute Order                                                     Page 2 of 2

**EXHIBIT 7, PAGE 77**

# EXHIBIT 8

**FILED**
Superior Court of California
County of Los Angeles

03/06/2026

David W. Slayton, Executive Officer / Clerk of Court

By: _____ A. He _____ Deputy

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| TRICIA HUFFMAN, individually and on behalf of all similarly situated persons,<br><br>Plaintiff(s),<br><br>v.<br><br>SMARTSWEETS, INC,<br><br>Defendant(s). | Case No.: 26STCV05079<br><br>**INITIAL STATUS CONFERENCE ORDER (COMPLEX CLASS ACTIONS)**<br><br>Case Assigned for All Purposes to Judge Theresa M. Traber<br><br>Department 1<br>Spring Street Courthouse |

This action has been designated as complex pursuant to CRC 3.400(a), and thus requires exceptional judicial management to carry out the purposes of that rule and to promote effective decision-making by the Court. This Initial Status Conference Order (Complex Class Actions) supplements a Minute Order served concurrently herewith. That Minute Order sets a date and time for the Initial Status Conference and includes many other important provisions which are NOT repeated in this Order. Counsel must review that Minute Order carefully to be fully informed of your obligations and the unique processes used in the Los Angeles Superior Court Complex Courtrooms.

1

**EXHIBIT 8, PAGE 79**

Note: Some provisions of this Order are in reference to wage-and-hour class actions and may not be applicable to other types of class actions. Insofar as they are irrelevant to your case, say so in your Joint Initial Status Conference Response Statement.

Pending further order, the following is ordered:

The Court orders counsel to prepare for the Initial Status Conference ("ISC") by identifying and discussing the central legal and factual issues in the case. Counsel for plaintiff is ordered to initiate contact with counsel for defense to begin this process. Counsel then must negotiate and agree, as much as possible, on a case management plan. To this end, counsel must file a Joint Initial Status Conference Response Statement five (5) court days before the Initial Status Conference. The Joint Response Statement must be filed on line-numbered pleading paper and must specifically answer each of the below-numbered questions. Do not use the Judicial Council Form CM-110 (Case Management Statement).

1. **PARTIES AND COUNSEL:** Please list all presently-named class representatives and presently-named defendants, together with all counsel of record, including counsel's contact and email information.

2. **STATUS OF PLEADINGS:** Please indicate whether defendant has filed a Notice of Appearance or an Answer to the Complaint, and, if so, indicate the filing date(s).

3. **POTENTIAL ADDITIONAL PARTIES:** Indicate whether any plaintiff presently intends to add additional class representatives, and, if so, the name(s) and date by which these class representatives will be added. Indicate whether any plaintiff presently intends to name additional defendants, and, if so, the name(s) and date by which the defendant(s) will be added. Indicate whether any appearing defendant presently intends to file a cross-complaint and, if so, the names of cross-defendants and the date by which the cross-complaint will be filed.

4. **IMPROPERLY NAMED DEFENDANT(S):** If the complaint names the wrong person or entity, please explain why the named defendant is improperly named and the proposed procedure to correct this error.

**EXHIBIT 8, PAGE 80**

5. **ADEQUACY OF PROPOSED CLASS REPRESENTATIVE(S):** If any party believes one or more named plaintiffs might not be an adequate class representative, including reasons of conflict of interest as described in *Apple Computer v. Superior Court* (2005) 126 Cal.App.4th 1253, please explain. No prejudice will attach to these responses.

6. **ESTIMATED CLASS SIZE:** Please discuss and indicate the estimated class size.

7. **OTHER ACTIONS WITH OVERLAPPING CLASS DEFINITIONS:** Please list other cases with overlapping class definitions. Please identify the court, the short caption title, the docket number, and the case status.

8. **POTENTIALLY RELEVANT ARBITRATION AND/OR CLASS ACTION WAIVER CLAUSES:** Please state whether arbitration is an issue in this case and attach any relevant document a plaintiff has signed or a sample of any relevant clause of this sort. Opposing parties must summarize their views on this issue.

9. **POTENTIAL EARLY CRUCIAL MOTIONS:** Opposing counsel should identify and describe the significant core issues in the case, and then identify efficient ways to resolve those issues, specifically considering the following:

- Motion to Compel Arbitration,
- Early motions in limine,
- Early motions about particular jury instructions and verdict forms,
- Demurrers,
- Motions to strike,
- Motions for judgment on the pleadings, and
- Motions for summary judgment and summary adjudication.

10. **CLASS CONTACT INFORMATION:** Counsel should discuss whether obtaining class contact information from defendant's records is necessary in this case and, if so, whether the parties consent to an "opt-out" notice process (as approved in *Belaire-West Landscape, Inc. v. Superior Court* (2007) 149 Cal.App.4th 554, 561). Counsel should address timing and procedure, including allocation of cost and the necessity of a third party administrator.

**EXHIBIT 8, PAGE 81**

**11.    PROTECTIVE ORDERS:** Parties considering an order to protect confidential information from general disclosure should begin with the model protective orders found on the Los Angeles Superior Court Website under "Tools for Court Users and Attorneys."

**12.    DISCOVERY:** Discovery is stayed until further order of the Court. Please discuss a discovery plan. If the parties cannot agree on a plan, summarize each side's views on discovery. The court generally allows discovery on matters relevant to class certification, which (depending on circumstances) may include factual issues also touching the merits. If any party seeks discovery from absent class members, please estimate how many, and also state the kind of discovery you propose[1].

**13.    INSURANCE COVERAGE:** Please state if (1) there is insurance for indemnity or reimbursement, and (2) whether there are any insurance coverage issues which might affect settlement.

**14.    ALTERNATIVE DISPUTE RESOLUTION:** Please discuss ADR and state each party's position about it. If pertinent, how can the court help to identify the best neutral and prepare the case for a successful settlement negotiation?

**15.    TIMELINE FOR CASE MANAGEMENT:** Please recommend dates and times for the following:

- The next status conference,
- A schedule for alternative dispute resolution, if it is relevant,
- A filing deadline for the motion for class certification, and
- Filing deadlines and descriptions for other anticipated non-discovery motions.

**16.    REMINDER WHEN SEEKING TO DISMISS:**

"A dismissal of an entire class action, or of any party or cause of action in a class action, requires court approval. . . . Requests for dismissal must be accompanied by a declaration setting forth the facts on which the party relies. The declaration must clearly state whether consideration, direct or indirect, is being given for the dismissal and must describe the consideration in detail."[2]

---

[1] See California Rule of Court, Rule 3.768.
[2] California Rule of Court, Rule 3.770(a)

**EXHIBIT 8, PAGE 82**

If the parties have settled the class action, that too will require judicial approval based on a noticed motion (although it may be possible to shorten time by consent for good cause shown).

17.    **REMINDER WHEN SEEKING APPROVAL OF A SETTLEMENT:**  To obtain approval of a class action settlement, the parties should strictly adhere to the Guidelines for Motions for Preliminary and Final Approval posted on the court's website under Tools for Litigators.  See the link to same in the Minute Order served concurrently herewith.  Plaintiff(s) must address any fee-splitting agreement in their motion for preliminary approval and demonstrate compliance with California Rule of Court 3.769 and the Rules of Professional Conduct 2-200(a) as required by *Mark v. Spencer* (2008) 166 Cal. App. 4th 219.

**18.**    **REMINDER WHEN USING THE MESSAGE BOARD:**  The court requires a pre-motion conference before any motion is filed, including discovery motions.  Counsel shall jointly post a *brief s*tatement on the message board setting forth the discovery in dispute or the essential issue(s) to be decided in the motion.  The court either will hold a prompt informal conference with the parties to discuss the dispute or tell the parties to call courtroom staff to obtain a motion date.  If one side refuses to state its position in a joint posting after a reasonable request from opposing counsel, the opposing counsel may post a message unilaterally.

19.    **NOTICE OF THE ISC ORDER:**  Plaintiff's counsel shall serve this Initial Status Conference Order on all defense counsel, or if counsel is not known, on each defendant and file a Proof of Service with the court within seven (7) days of the date of this Order.  If the Complaint has not been served as of the date of this Order, plaintiff(s) must serve the Complaint, along with a copy of this Order, within five (5) days of the date of this Order.  Once served, each as yet non-appearing defendant shall file a Notice of Appearance (identifying counsel by name, firm name, address, email address, telephone number and fax number).  The filing of a Notice of Appearance is without prejudice to (a) any jurisdictional, substantive or procedural challenge to the Complaint, (b) any affirmative defense, and (c) the filing of any cross-complaint in this action.

20.    **e-SERVICE PROVIDER**:  The parties should refer to the Court's website for the list of e-service providers which are approved for complex cases.  The parties must sign up with the provider at

5

**EXHIBIT 8, PAGE 83**

least ten days in advance of the Initial Status Conference and advise the Court, via email to sscdept1@lacourt.org, which provider was selected.  While the parties are free to choose any approved service, Department 1 prefers CaseAnywhere.

Dated: March 6, 2026

Theresa M. Traber / Judge

Hon. Theresa M. Traber
Judge of the Los Angeles Superior Court

6

**EXHIBIT 8, PAGE 84**

# EXHIBIT 9

| | FOR COURT USE ONLY |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES** | |
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA, 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>03/06/2026<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: _____ A. He _____ Deputy |
| PLAINTIFF(S)/PETITIONER(S):<br>Tricia Huffman, | |
| DEFENDANT(S)/RESPONDENT(S):<br>SmartSweets, Inc. | |
| **CLERK'S CERTIFICATE OF SERVICE BY ELECTRONIC SERVICE** | CASE NUMBER:<br>26STCV05079 |

I, David W. Slayton, Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein and that on this date I served the

**Minute Order of 03/06/2026**
**Initial Status Conference Order of 03/06/2026**

upon each party or counsel of record in the above entitled action by electronically serving to the party or parties at the electronic address as listed below:

**"Trenton R. Kashima" <tkashima@brysonpllc.com>,**
**"Alexander E. Wolf" <awolf@milberg.com>**

The electronic transmission originated from the Superior Court of California, County of Los Angeles email address eService-DoNotReply@lacourt.org at the Spring Street Courthouse, 312 North Spring Street, Los Angeles, CA, 90012.

Dated: 03/6/2026

David W. Slayton, Executive Officer / Clerk of Court

By: A. He
_____
Deputy Clerk

**Page 1 of 1**

**CLERK'S CERTIFICATE OF SERVICE BY ELECTRONIC SERVICE**

LASC CIV 310 NEW 03/25
For Mandatory Use

**EXHIBIT 9, PAGE 86**
Code of Civil Procedure § 1010.6(6)

# EXHIBIT 10

 Language Access
English

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Past Proceedings

**CASE INFORMATION:**  26STCV05079

**Case Title:**           TRICIA HUFFMAN VS SMARTSWEETS, INC.

**Filing Courthouse:**    Spring Street Courthouse

**Filing Date:**          2/18/2026

**Case Type:**            Other Personal Injury/Property Damage/Wrongful Death (General Jurisdiction)

**Status:**               Pending

[Click here to access document images for this case.](#)

If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page

🖨 Print     New Search

## FUTURE HEARINGS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Past Proceedings

**6/12/2026**  08:30  Department 1  312 North Spring Street, Los Angeles, CA 90012  Initial Status Conference

## PARTY INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Past Proceedings

| | |
|---|---|
| **HUFFMAN TRICIA** | Plaintiff |
| **KASHIMA TRENTON R.** | Attorney for Plaintiff |
| **SMARTSWEETS INC.** | Defendant |
| **WOLF ALEXANDER E.** | Attorney for Plaintiff |

## DOCUMENTS FILED

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Past Proceedings

| | | |
|---|---|---|
| 3/6/2026 | Clerks Certificate of Service By Electronic Service | Filed by Clerk |
| 3/6/2026 | Initial Status Conference Order | Filed by Clerk |
| 3/6/2026 | Minute Order (Court Order Scheduling Initial Status Conference) | Filed by Clerk |
| 2/18/2026 | Alternative Dispute Resolution Packet | Filed by Clerk |

**EXHIBIT 10, PAGE 88**

| | | |
|---|---|---|
| 2/18/2026 | CLRA Venue Declaration | Filed by Tricia Huffman, (Plaintiff) |
| 2/18/2026 | Civil Case Cover Sheet | Filed by Tricia Huffman, (Plaintiff) |
| 2/18/2026 | Complaint | Filed by Tricia Huffman, (Plaintiff) |
| 2/18/2026 | Notice of Case Assignment - Unlimited Civil Case | Filed by Clerk |
| 2/18/2026 | Summons on Complaint | Filed by Tricia Huffman, (Plaintiff) |

## PROCEEDINGS HELD

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Past Proceedings

3/6/2026 09:21 AM   Department 1   Court Order

## REGISTER OF ACTIONS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Past Proceedings

| | |
|---|---|
| 3/6/2026 | Initial Status Conference Order; Signed and Filed by: Clerk |
| 3/6/2026 | Initial Status Conference scheduled for 06/12/2026 at 08:30 AM in Spring Street Courthouse at Department 1 |
| 3/6/2026 | The case is placed in special status of: Deemed Complex |
| 3/6/2026 | The case is placed in special status of: Stay - Deemed Complex |
| 3/6/2026 | Minute Order (Court Order Scheduling Initial Status Conference) |
| 3/6/2026 | Clerks Certificate of Service By Electronic Service; Filed by: Clerk; As to: Trenton R. Kashima (Attorney); Alexander E. Wolf (Attorney) |
| 3/6/2026 | The case is removed from the special status of: Provisionally Complex ? Case Type |
| 2/19/2026 | Case assigned to Hon. Theresa M. Traber in Department 1 Spring Street Courthouse |
| 2/19/2026 | Updated -- CLRA Venue Declaration: Name Extension: blank |
| 2/18/2026 | Complaint; Filed by: Tricia Huffman, (Plaintiff); As to: SmartSweets, Inc. (Defendant) |
| 2/18/2026 | Civil Case Cover Sheet; Filed by: Tricia Huffman, (Plaintiff); As to: SmartSweets, Inc. (Defendant) |
| 2/18/2026 | Summons on Complaint; Issued and Filed by: Tricia Huffman, (Plaintiff); As to: SmartSweets, Inc. (Defendant) |
| 2/18/2026 | CLRA Venue Declaration; Filed by: Tricia Huffman, (Plaintiff); As to: SmartSweets, Inc. (Defendant) |
| 2/18/2026 | Alternative Dispute Resolution Packet; Filed by: Clerk |
| 2/18/2026 | Notice of Case Assignment - Unlimited Civil Case; Filed by: Clerk |
| 2/18/2026 | The case is placed in special status of: Class Action |
| 2/18/2026 | The case is placed in special status of: Provisionally Complex ? Case Type |

**EXHIBIT 10, PAGE 89**

Back To Top

**EXHIBIT 10, PAGE 90**

## CERTIFICATE OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the City of Costa Mesa, County of Orange, State of California. I am over the age of 18 years and not a party to the within action. My business address is 600 Anton Boulevard, Suite 2000, Costa Mesa, California 92626-7655. On April 7, 2026, I served the documents named below on the parties in this action as follows:

DOCUMENT(S) SERVED: **APPENDIX OF STATE COURT PLEADINGS IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL OF CLASS ACTION TO THE UNITED STATES DISTRICT COURT**

SERVED UPON:
Alexander E. Wolf
awolf@milberg.com
**MILBERG, PLLC**
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212
Tel: 872-365-7060

Trenton R. Kashima
tkashima@brysonpllc.com
**BRYSON HARRIS SUCIU & DEMAY PLLC**
19800 MacArthur Blvd., Suite 270
Irvine, California 92612
Tel: 212-946-9389

*Attorneys for Plaintiff*

☒ **(VIA FEDERAL EXPRESS)** I am readily familiar with the practice of Dorsey & Whitney LLP for collection and processing of correspondence for overnight delivery and know that the document(s) described herein will be deposited in a box or other facility regularly maintained by Federal Express for overnight delivery.

☒ **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this Court, at whose direction this service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 7, 2026, at Costa Mesa, California.

_____
Kim Massure-Rayson

1
CERTIFICATE OF SERVICE